UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

EDGAR PLASCENCIA,
CDCR #BG-9161,

Plaintiff,

vs.

CHIRAG BHAVSAR, Doctor; SAMUEL KO, Doctor; MICHAEL DIZON, RN; CHRISTANA BETACOURT; LVN; CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES; CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,

Defendants.

Case No.: 26-CV-1435 JLS (MSB)

**ORDER:**

**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS,**

**(2) SCREENING COMPLAINT PURSUANT TO 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § 1915A(b), AND**

**(3) SETTING DEADLINE TO CHOOSE OPTION**

(ECF No. 2)

Presently before the Court is pro se Plaintiff Edgar Plascencia's Motion to Proceed *in Forma Pauperis* ("IFP") ("IFP Mot.," ECF No. 2). Plaintiff has filed a civil rights complaint pursuant to 42 U.S.C. § 1983. *See* ECF No. 1 ("Compl."). Plaintiff contends that medical officials at Centinela State Prison violated his Eighth Amendment rights by failing to provide proper care and assign him to a lower bunk on the lower tier after his knee surgery at an outside facility on May 23, 2022, and further claims that Defendants failed to provide proper care after he subsequently fell from his lower tier top bunk. *See*

*generally* ECF No. 1-2 at 1–4. For the reasons discussed below, the Court **GRANTS** Plaintiff's IFP Motion, screens and dismisses most of his claims pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A; however, some of the allegations against Dr. Ko are sufficient to state a plausible claim for relief under the Eighth Amendment. The Court therefore provides Plaintiff the option to either amend his pleading in full or to proceed with only his sufficiently pleaded claim against Defendant Ko.

## I. Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405, consisting of a $350 statutory fee plus an additional administrative fee of $55, although the administrative fee does not apply to persons granted leave to proceed IFP. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). A prisoner seeking leave to proceed IFP must submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has insufficient assets. *See* 28 U.S.C. § 1915(b)(1)&(4); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016). Prisoners who proceed IFP must pay any remaining balance in "increments" or "installments," regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(1)&(2); *Bruce*, 577 U.S. at 84.

In support of his IFP Motion, Plaintiff has submitted a copy of his California Department of Corrections and Rehabilitation ("CDCR") Inmate Statement Report and Prison Certificate attested to by a CDCR trust account official. IFP Mot. at 8. The

document shows he had an average monthly balance of $368.09 and average monthly deposits of $297.50, with an available balance of $131.98. *Id.* Therefore, the Court **GRANTS** Plaintiff's IFP Motion and assesses an initial partial filing fee of $73.62, *but the initial fee need be collected only if sufficient funds are available in Plaintiff's account at the time this Order is executed*. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee"); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered"). Plaintiff is required to pay the remainder of the $350 filing fee in full pursuant to the installment provisions of 28 U.S.C. § 1915(b)(1).

## II. Screening Pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

### *A. Legal Standard*

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). The Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

***B. Factual Allegations in the Complaint***[1]

Plaintiff alleges he underwent an orthopedic surgical procedure to repair his left knee on May 23, 2022, and returned that same day to Centinela State Prison under the medical care of Defendants Registered Nurse ("RN") Michael Dizon, Dr. Chirag Bhavsar, Dr. Samuel Ko and Licensed Vocational Nurse ("LVN") Christana Betacourt. ECF No. 1-2 at 1. Plaintiff further claims the California Department of Corrections and Rehabilitation ("CDCR") health care operations manual's policies and procedures for this type of surgery

---

[1] Plaintiff acknowledges he previously filed a complaint in S.D. Cal. Case No. 23-CV-895 RSH (SBC), which involved the same or similar facts (and several of the same defendants) as in this case. *See* Compl. at 6. In that case, Judge Huie initially granted Plaintiff's IFP motion and dismissed the complaint for failure to state a claim with leave to amend. *See Plascencia v. Ko, et al.*, No. 23-CV-895 RSH (SBC), ECF No. 5 (S.D. Cal. Aug. 7, 2023) ("*Plascencia I*"). Instead of filing an amended complaint, Plaintiff subsequently filed a notice of voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), *see Plascencia I*, ECF No. 8, and on October 26, 2023, Judge Huie dismissed the case without prejudice pursuant to Plaintiff's notice, *id.*, ECF No. 9. Because the prior case was dismissed voluntarily pursuant to Fed. R. Civ. P. 41(a), this civil action is "an entirely new lawsuit unrelated" to that prior action. *See City of South Pasadena v. Mineta*, 284 F.3d 1154, 1157–58 (9th Cir. 2002) (noting a voluntary dismissal without prejudice pursuant to Fed. R. Civ. P. 41(a) "leaves the situation as if the action never had been filed," and as a result, "any future lawsuit based on the same claim [is] an entirely new lawsuit unrelated to the earlier (dismissed) action" (citations omitted) (alterations in original)).

indicate a patient should be taken to the Correctional Treatment Center ("CTC") for 72 hours "to make sure there are no complications" and that during this time, "the patient's meal[]s and med[]s are to be brought to the patient's room." *Id.* Plaintiff claims the policy further provides that once the 72 hours has passed without complications, "the patient is to be discharged" and "returned to his housing in a wheelchair," which is "pushed by a[n] (ADA) worker," who will also push the patient to appointments and retrieve his medications for 14 days; meals are to be brought to the patient's housing for 30 days. *Id.* at 1–2. Plaintiff also claims the policy requires review of the patient's housing accommodation prior to leaving CTC and a patient assigned to a top tier and/or bunk "is to be moved to the bottom tier in a lower[]bunk/lower tier." *Id.* at 2.

Plaintiff contends Defendant RN Dizon failed to follow "ANY" of the claimed policies and procedures and instead "immediately" cleared Plaintiff to return to his housing unit. *Id.* When Plaintiff objected that he was on a top bunk in the lower tier, Dizon stated: "I don't care about polic[i]e[s] [and] [p]rocedures, you can deal with your floor staff about your top bunk." *Id.* Plaintiff claims Dizon also refused to provide him with a wheelchair and instead "gave [him] a pair of crutches" and ordered him to return to his assigned yard and unit by "walk[ing] the three hundred yards on crutches just two hour[]s after his [o]rthopedic [s]urgery." *Id.* After returning, Plaintiff claims he asked unidentified staff to move him to a lower bunk, but they told him that was "medical[s] job." *Id.* Plaintiff alleges he fell mere "hour[s]" after his surgery when he "tr[ied] to get down to use the bathroom." *Id.*

Plaintiff relatedly alleges Defendant Dr. Bhavsar, who was the yard doctor at Centinela, knew Plaintiff was going out for and returning from surgery and knew the relevant policies and procedures for that surgery. *Id.* at 3. Plaintiff claims Dr. Bhavsar knew he was assigned to a top bunk but failed to update his housing chrono. *Id.* Plaintiff alleges Dr. Bhavsar's failure "[t]hus caus[ed] the injury that the Plaintiff [s]uffered from the fall off his top bunk." *Id.*

/ / /

Separately, Plaintiff alleges that after his fall, Defendant LVN Betacourt "would not dress his wound" which was bleeding from the fall. *Id.* Instead, Betacourt "un[w]rapped Plaintiff's wound and the [w]rapped Plaintiff's wound back up with the same [w]rap that was bloody and dirty." *Id.* Plaintiff claims Betacourt also took his wheelchair after the fall "and would not allow the ADA worker to help" him. *Id.*

Finally, Plaintiff asserts Defendant Dr. Ko, who he saw after the fall, took "x[-]rays and a MRI" and then "told Plaintiff there was nothing wrong with him and refused to send [him] to a specialist" despite the physical therapist's recommendation to do so. *Id.* Plaintiff continued to see Dr. Ko for two years for "[s]evere [p]ain in his back due to the fall" and claims that each time, Dr. Ko "[r]efused to treat [him]." *Id.* When Dr. Ko was later replaced by Dr. Cane, Dr. Cane sent Plaintiff to a neurologist. *Id.* On April 23, 2025, at Plaintiff's eventual neurology consultation, he was informed that his fall from the top bunk resulted in a "very serious back injury," which included "[t]wo lower Thoracic Compression Fractures demonstrating Chronic Features; Mild Thoracic Kyphosis; Degenerative Change of the Thoracic Spine; Ne[u]roforaminal Stenosis of Cervical Spine; and Degenerative Disc Disease," and that he would need treatment for the rest of his life. *Id.* at 1. The neurologist who examined him, along with reviewing the x-rays and the MRI, "told the Plaintiff due to the lapse of time from . . . the fall from the top bunk . . . now you have nerve damage." *Id.* at 3. Plaintiff asserts the neurologist stated that had Plaintiff been seen right after the fall, the nerve damage could have been "[s]topped." *Id.* Plaintiff contends Dr. Ko had the "same" x-rays and MRI both Dr. Cane and the neurologist also had, yet "[f]ailed to [p]revent [h]arm" by refusing to help. *Id.* at 4.

In sum, Plaintiff asserts an Eighth Amendment claim against Defendants RN Dizon and Dr. Bhavsar for deliberate indifference to his safety and failure to protect him from harm arising from the top bunk assignment and his subsequent fall. He further asserts an Eighth Amendment claim against Defendants LVN Betacourt and Dr. Ko for deliberate indifference to his medical needs and failure to protect him from harm arising from treatment rendered after his fall. Finally, Plaintiff also names as Defendants California

Correctional Health Care Services ("CCHCS") and CDCR but includes no factual allegations against either of these Defendants. *See generally* Compl.

Plaintiff seeks compensatory and punitive monetary damages against each Defendant, as well as a jury trial, costs, and any additional relief the Court finds appropriate. ECF No. 1-2 at 5.

### *C. Discussion*

Plaintiff seeks to proceed against Defendants Dizon, Dr. Bhavsar, Betacourt, and Dr. Ko in their individual and official capacities and against Defendants CCHCS and CDCR "for the p[u]r[]pose of Discovery issues." *See* Compl. at 2; ECF No. 1-2 at 1, 4.

As an initial matter, Plaintiff may not proceed against Defendants CDCR or CCHCS on the claims in the instant civil action because neither CDCR nor CCHCS are a "person" subject to suit under § 1983, but rather are agencies of the State of California. *See Devereaux*, 263 F.3d at 1074 (Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights"); *see Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."); *see also Maldonado v. Harris*, 370 F.3d 945, 951 (9th Cir. 2004) ("State agencies . . . are not 'persons' within the meaning of § 1983, and are therefore not amenable to suit under that statute." (citing *Will*, 491 U.S. at 70)).

Nor may Plaintiff proceed with a claim for damages against any of the Defendants in their "official capacity" because such claims are barred under the Eleventh Amendment. Absent "a waiver by the state or a valid congressional override," *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999), "[t]he Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities," *Aholelei v. Department of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court." *Dittman*, 191 F.3d at 1025–26; *see Alabama v. Pugh*, 438 U.S. 781, 782 (1978) ("There can be no doubt, however, that

suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless [the State] has consented to the filing of such a suit.")

Accordingly, the Court **DISMISSES** CDCR and CCHCS as Defendants with respect to Plaintiff's Eighth Amendment claims for damages and **DISMISSES** all Defendants to the extent he seeks damages against them in their official capacities.[2] The Court will proceed to consider Plaintiff's individual capacity claims against the remaining named Defendants.

*1. Eight Amendment, Failure to Protect*

Plaintiff alleges Defendants Dizon and Dr. Bhavsar were deliberately indifferent to his safety and failed to protect him from harm by requiring him to return to his lower tier/top bunk housing accommodations shortly after surgery and by failing to provide him a wheelchair immediately after he was released from the CTC.

"[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, "a prison official must have a 'sufficiently culpable state of mind,'" that is, "one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 302–03). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

---

[2] Even if Defendants CDCR and CCHCS were not subject to dismissal for the reasons stated above, they would still be dismissed because Plaintiff fails to make specific allegations as to any claimed action or inaction by either the CDCR or CCHCS in his Complaint and fails to allege any constitutional violation committed by either entity. *See generally* Compl.; *see also Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.").

Plaintiff alleges to have suffered a "very serious back injury" from his fall, including but not limited to two lower thoracic compression fractures, which the Court assumes for purposes of screening are objectively and serious medical conditions. *See* ECF No. 1-2 at 1; *see also Glosson v. Morales*, 469 F. Supp. 2d 827, 834 (S.D. Cal. 2007) ("'A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, *etc.*, which lasts even up to two or three weeks.'" (quoting *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997))); *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002) (holding that the PLRA "requires a prior showing of physical injury that need not be significant but must be more than *de minimis*").

However, Plaintiff fails to plausibly allege Dizon and Bhavsar acted with deliberate indifference to a substantial or excessive risk of serious harm. *Farmer*, 511 U.S. at 837. Rather, Plaintiff merely alleges that RN Dizon and Dr. Bhavsar disregarded or failed to properly follow CDCR post-surgical policy by prematurely clearing him to return to his housing unit with the use of crutches rather than a wheelchair and failing to change his lower tier bunk assignment from a top bunk to a lower bunk. To the extent Plaintiff attempts to premise his claim on these Defendants' asserted failure to follow CDCR's health care policies and procedures, any such failures to follow policy, on their own, do not state a federal constitutional violation. *See, e.g.*, *James v. Emmens*, No. 16CV2823-WQH (NLS), 2018 WL 4002644, at *9 (S.D. Cal. Aug. 22, 2018), *report and recommendation adopted*, No. 16CV2823-WQH-NLS, 2019 WL 366224 (S.D. Cal. Jan. 29, 2019) ("[V]iolations of policies do not rise to the level of a constitutional violation." (first citing *Sherman v. Wagner*, No. CV-10-6128-HU, 2011 WL 1337091, at *3 (D. Or. Feb. 28, 2011), *report and recommendation adopted*, No. CV 10-6128-HU, 2011 WL 1322312 (D. Or. Apr. 6, 2011) ("[F]ailure to follow prison policy does not, by itself, state a section 1983 claim."); then citing *Porro v. Barnes*, 624 F.3d 1322, 1229 (10th Cir. 2010) ("[V]iolation of a prison regulation does not give rise to an Eighth Amendment violation absent evidence the prison official's conduct failed to conform to the constitutional

standard." (internal quotation omitted))).

Specifically, Plaintiff alleges RN Dizon failed to follow policy and "cleared" Plaintiff to return to his housing unit immediately after his return to Centinela after surgery, and when Plaintiff noted he had a lower tier/top bunk assignment, Dizon stated: "I don[']t care about polic[y] and [p]rocedures, you can deal with your floor staff about your top bunk." ECF No. 1-2 at 5. Plaintiff claims Dizon also refused to give him a wheelchair and instead provided crutches for the three-hundred-yard walk to his assigned unit. *Id.* Plaintiff plainly alleges that it was Dizon's disregard of procedure that led to the risk of harm, *see* ECF No. 1-2 at 2, but he fails to proffer sufficient facts which plausibly allege Dizon actually knew either the use of crutches and/or his top bunk assignment created a substantial risk of harm or that Dizon consciously disregarded that risk. *See Farmer*, 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence" and "'more than ordinary lack of due care for the prisoner's interests or safety.'" (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)) (citing *Estelle v. Gamble*, 429 U.S. 97, 104, 106 (1976))). Plaintiff's vague and conclusory allegation that Dizon knew the risk of harm existed, *see* ECF No. 1-2 at 2, without more, is not sufficient to state a claim, *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiff similarly alleges Dr. Bhavsar was aware generally of the policies and procedures for both "this kind of [s]urgery" and his housing assignment, and "disregarded" updating his chrono and "mov[ing] [him] to a lower bunk." ECF No. 1-2 at 3. Again, however, Plaintiff offers only conclusory allegations that Bhavsar knew both these things and simply speculates that his risk of injury "could have been [e]liminated [t]hrough [r]easonable and [a]vailable [m]easures." *Id.* Crucially, Plaintiff fails to allege any facts which plausibly support these conclusions. *See Farmer*, 511 U.S. at 835; *Iqbal*, 556 U.S. at 678; *Walter v. Lancaster State Prison Med. Dep't*, No. CV 09-3932-R (SH), 2010 WL 2680535, at *6 (C.D. Cal. May 27, 2010), *report and recommendation adopted*, No. CV 09-3932-R (SH), 2010 WL 2680537 (C.D. Cal. July 1, 2010) ("Defendant's failure to

check Plaintiff's medical file based on his statements about his medical condition and assign him a lower bunk amounts, at most, to negligence. . . . An isolated incident of arguable neglect such as this one, does not constitute deliberate indifference to serious medical needs." (citations omitted)).

If Plaintiff wishes to proceed with his Eighth Amendment claims against Dizon and Bhavsar, he must set forth facts which plausibly how and why each of them was aware of facts from which they could draw an inference that clearing him to return to his housing unit with crutches right after his return from surgery and failing to assign him to a lower bunk presented a substantial risk of serious harm *and* that each of them also drew that inference. *Id.* at 837; *see Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004) ("Deliberate indifference is a high legal standard.")

Accordingly, Plaintiff's Eighth Amendment claims against Defendants Dizon and Bhavsar are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121; *Iqbal*, 556 U.S. at 678. As set forth below, Plaintiff will be given the option to amend his Complaint to cure these pleading deficiencies or proceed only with the claim which survives screening. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

2. *Eighth Amendment, Denial of Medical Care*

Plaintiff also alleges Defendants Betacourt and Dr. Ko were deliberately indifferent to his medical needs and failed to protect him from further harm after his fall.

A denial or delay of medical care for a prisoner's serious medical needs may constitute a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 104–05. "In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show 'deliberate indifference' to his 'serious medical needs.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Estelle*, 429 U.S. at 104). "[I]ndicia of a 'serious'

medical need include (1) the existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, (2) the presence of a medical condition that significantly affects an individual's daily activities, and (3) the existence of chronic or substantial pain." *Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994) (citation omitted). "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Colwell*, 763 F.3d at 1066 (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). To show deliberate indifference, a plaintiff must allege both "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted).

As an initial matter, the Court finds for the purposes of screening that Plaintiff has plausibly alleged a serious medical need arising from the "very serious back injury" he suffered from the fall which caused him "[s]evere [p]ain," particularly when coupled with the fact that Plaintiff also underwent knee surgery earlier that same day and had a separate surgical bandage from that procedure. *See* ECF No. 1-2 at 1; *see, e.g.*, *Burnett v. Faecher*, No. CV 08-2745-PSG(MLG), 2009 WL 2007118, at *7 (C.D. Cal. July 6, 2009) ("Plaintiff's allegations of disabling back pain are sufficient to establish a serious medical need."). The Court will proceed to address, in turn, Plaintiff's allegations against LVN Betacourt and Dr. Ko.

First, Plaintiff alleges that after his fall, LVN Betacourt initially "would not dress his wound," and more specifically, change the orthopedic surgical bandage which he claims was bleeding from the fall. ECF No. 1-2 at 3. Plaintiff claims Betacourt instead "un[w]rapped Plaintiff's wound," and would wrap "Plaintiff's wound back up with the same [w]rap that was bloody and dirty." *Id.* Plaintiff also faults Betacourt for taking his wheelchair after the fall and refusing to allow an ADA worker to help him. *See id.*

Yet, as he acknowledges Betacourt ultimately unwrapped and re-wrapped his surgical bandage when told to do so, *see id.*, Plaintiff does not claim Betacourt failed or

refused to treat him. *See, e.g.*, *Alexander v. Salazar*, No. 219CV04138MWFSK, 2020 WL 8125529, at *1 (C.D Cal. Mar. 24, 2020) ("[R]efusing to clean a wound or redress bandages for no good reason, if true, can plausibly amount to deliberate medical indifference.") (collecting cases). Rather, Plaintiff alleges at most negligence or malpractice in Betacourt's actions in treating his surgical wound, which fails to state a claim under the Eighth Amendment. *See Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Moreover, Plaintiff fails to offer facts which plausibly allege Betacourt's actions in treating his post-surgical knee after the fall resulted in any physical harm to him, such as an infection or other further injury to the treated knee. *See Jett*, 439 F.3d at 1096 (To show deliberate indifference, a plaintiff must allege both "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) *harm caused by the indifference*." (emphasis added)); *see Oliver*, 289 F.3d at 627 (holding that the PLRA "requires a prior showing of physical injury that need not be significant but must be more than *de minimis*").

Next, the Court turns to Betacourt's asserted refusal to allow Plaintiff the assistance of an ADA worker and actions in taking his wheelchair after his fall. *See* ECF No. 1-2 at 3. Here, the allegations in the Complaint are vague, conclusory, and inconsistent with Plaintiff's prior claim to have been refused a wheelchair altogether by Dizon.[3] For example, Plaintiff fails to indicate what level of mobility assistance he required after the fall, when he was provided a wheelchair, why he needed one, or how Betacourt's failure to "allow the ADA worker to help" him, *id.*, demonstrates her deliberate indifference, *Burton v. McVay*, No. 24-CV-1302-MMA (JLB), 2024 WL 3798404, at *4 (S.D. Cal. Aug.

[3] Plaintiff fails to specify when he was provided a wheelchair, as he also faults Dizon for refusing to provide one just a few hours earlier. *See* ECF No. 1-2 at 2 ("Defendant Michael Dizon then told plaintiff that the wheelchair stays here and gave plaintiff a pair of crutches.")

13, 2024) ("The Complaint does not plausibly allege Defendants should have realized failing to provide Plaintiff with a cane, a walker, a wheelchair or rehabilitation therapy presented a risk to him because there are merely conclusory allegations that the nature of his injury required those things, and no factual allegations Defendants were aware they were necessary." (citation omitted)). Even were the Court inclined to find Plaintiff has sufficiently alleged a "purposeful act" sufficient to survive screening, Plaintiff again fails to allege any harm *caused* by Betacourt's actions in taking his wheelchair and refusing to provide Plaintiff with ADA assistance, both of which he alleges occurred after his fall from the top bunk. *See* ECF No. 1-2 at 3; *see also Jett*, 439 F.3d at 1096; *Oliver*, 289 F.3d at 627.

Finally, the Court turns to Plaintiff's allegations against Dr. Ko. Here, Plaintiff acknowledges Defendant Ko examined Plaintiff after his fall and ordered an MRI and x-rays, but alleges Dr. Ko then erroneously concluded "there was nothing wrong with him" and "refused" to refer Plaintiff to a specialist even after a physical therapist recommended one. ECF No. 1-2 at 3. First, the Court finds Plaintiff fails to plausibly allege deliberate indifference arising from Dr. Ko's treatment immediately after the fall, as he acknowledges Dr. Ko examined him and responded to his post-fall medical need by ordering both x-rays and an MRI. *See id.*; *see also Colwell*, 763 F.3d at 1066 ("Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" (quoting *Hutchinson*, 838 F.2d at 394)); *Toguchi*, 391 F.3d at 1060. At most, Plaintiff claims Dr. Ko failed to properly discover and diagnose his back injury, or that there was a disagreement between himself and Dr. Ko (as well as between Dr. Ko and the physical therapist) as to whether Plaintiff had suffered an injury from the fall and whether referral to a specialist was warranted. But these allegations, by themselves, fail to state a claim under the Eighth Amendment. *See Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not

become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."); *Colwell*, 763 F.3d at 1068 ("A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." (internal quotation marks and citation omitted)); *Toguchi*, 391 F.3d at 1060 ("[A] difference of medical opinion . . . cannot support a claim of deliberate indifference.")

That said, the Court finds Plaintiff does state facts sufficient to plausibly allege a claim of deliberate indifference against Dr. Ko based on Ko's subsequent response to Plaintiff's continued pain. More specifically, Plaintiff contends he continued to see Dr. Ko for two years for the "[s]evere [p]ain in his back" and asserts that "each time" Dr. Ko again "[r]efused to treat" him. ECF No. 1-2 at 3. Dr. Cane, who later replaced Dr. Ko, eventually referred Plaintiff to a neurologist, who in turn "told the Plaintiff due to the lapse of time from the fall from the top bunk [] now you have nerve damage." *Id.* Plaintiff adds the neurologist further opined that had he been seen right after the fall, his nerve damage could have been "[s]topped." *Id.* While "a difference of medical opinion . . . cannot support a claim of deliberate indifference," *Toguchi*, 391 F.3d at 1060, the Court finds Plaintiff's allegations concerning Dr. Ko's subsequent failure to treat him and refer him to a specialist, when coupled with the initial referral recommendation by the physical therapist, the subsequent referral by Dr. Cane, the neurologist's eventual diagnosis based on the "same" x-rays and MRI Dr. Ko had, and the neurologist's indication that the delay in treatment resulted in nerve damage which could have been prevented if treated sooner, are sufficient to allege a plausible claim of deliberate indifference. *See* ECF No. 1-2 at 3–4; *Jett*, 439 F.3d at 1096 (to show deliberate indifference, a plaintiff must allege both "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference"). Given Dr. Ko's continued refusal to provide a referral was contrary to both the physical therapist's initial recommendation and Dr. Cane's subsequent referral, both of which were borne out by the neurologist's diagnosis based on the "same" tests Dr.

Ko was privy to, the Court finds Plaintiff has plausibly alleged that Dr. Ko's failure to refer him to a specialist under the circumstances presented here was "medically unacceptable" and was chosen in "conscious disregard of an excessive risk" to Plaintiff's health. *See Toguchi*, 391 F.3d at 1058 (a claim of deliberate indifference can be sustained in a situation where "the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health" (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (alteration in original)).

Accordingly, with respect to Plaintiff's allegations concerning Dr. Ko's subsequent response to his two years of continued pain after his fall from the top bunk, the Court finds Plaintiff plausibly states an Eighth Amendment deliberate indifference claim against Defendant Ko "sufficient to meet the low threshold for proceeding past the screening stage." *Wilhelm*, 680 F.3d at 1123. Meanwhile, Plaintiff's Eighth Amendment claim against Defendant Betacourt is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121; *Iqbal*, 556 U.S. at 678. As set forth below, Plaintiff will be given the option to amend his Complaint to cure the pleading deficiencies of his dismissed claims or proceed only with the claim which survives screening. *See Rosati*, 791 F.3d at 1039.

*3. Plaintiff's Options*

Because the Court has determined that only part of Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Ko survives *sua sponte* screening and Plaintiff's remaining claims against all other Defendants do not, the Court provides Plaintiff the option to (1) notify the Court of his intent to proceed only with the Eighth Amendment deliberate indifference claim against Defendant Ko *or* (2) file an Amended Complaint that corrects all the deficiencies of pleading identified in this Order. Plaintiff must choose one of those two options within forty-five (45) days from the date this Order is issued. If Plaintiff notifies the Court that he wishes to proceed only with the claim which has survived screening, the Court will issue an Order directing the Clerk to issue the

summons as to Defendant Ko and will direct the U.S. Marshal to effect service of the summons and Complaint on Ko. However, all other claims as currently alleged against all other Defendants will be dismissed from this action without further leave to amend.

## III. Conclusion

In light of the foregoing, the Court:

1) **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2).

2) **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $73.62 initial filing fee assessed, *if those funds are available at the time this order is executed*, and forward whatever balance remains of the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2).

3) **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Jeff Macomber, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001.

4) **DISMISSES** Plaintiff's Complaint in its entirety for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1) with the exception of his Eighth Amendment deliberate indifference claim against Defendant Ko.

5) **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to either: (1) file a Notice of Intent to Proceed with his Eighth Amendment deliberate indifference claim against Defendant Ko only; or (2) file an Amended Complaint correcting the deficiencies of pleading identified in this Order.

If Plaintiff chooses to file an amended pleading, his Amended Complaint must be complete by itself without reference to any prior version of his pleading, and any defendants not named and any claims not re-alleged will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542,

1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty*., 693 F.3d 896, 928 (9th Cir. 2012) (Claims which are not re-alleged in an amended pleading may be "considered waived if not repled.")

If Plaintiff instead chooses to file a Notice of Intent to Proceed only with the claim which has survived screening, the Court will issue an Order directing the Clerk to issue a summons as to Defendant Ko and will direct the U.S. Marshal to effect service of the summons and Complaint upon Ko only. All other claims alleged in Plaintiff's original Complaint against all other Defendants will be dismissed without further leave to amend.

**IT IS SO ORDERED**.

Dated: July 20, 2026

Janis L. Sammartino

Hon. Janis L. Sammartino
United States District Judge